UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GWENDOLYN WILLIAMS, <br> CHRISTOPHER WILLIANS, <br> KENNETH SCOTT BRIDGEWATER, <br> *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF DETROIT DOWNTOWN <br> DEVELOPMENT AUTHORITY, <br> *et al*., <br><br> Defendants. | Case No. 16-14112 <br> Honorable Laurie J. Michelson <br> Magistrate Judge Anthony P. Patti |

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DDA'S MOTION TO DISMISS [189]

Pursuant to a lease agreement with Defendant Detroit Development Authority ("DDA"), Plaintiffs operated the Centre Park Restaurant and Bar in an area of downtown Detroit that is being redeveloped. The bar owners wanted to participate in the redevelopment project. But their bid was rejected. They subsequently, and publicly, complained about the bid process. According to the bar owners, this led the City of Detroit to temporarily close the bar and the DDA to prematurely terminate their lease. So the bar owners, through their counsel Andrew Paterson, sued a host of City officials and City entities.

The litigation has been contentious. There have been repeated discovery abuses, including failures to produce requested information. This has resulted in many discovery disputes—ones that have come at significant cost to the DDA. So the DDA now moves to dismiss the bar owners' case as a discovery sanction, hold the bar owners in contempt, and urges the Court to conditionally incarcerate them.

While the conduct on both sides has been less than exemplary, the repeated misrepresentations by Plaintiffs' counsel and the Plaintiffs' failures to comply with discovery orders—despite warnings and the imposition of less severe sanctions—warrant the dismissal of Plaintiffs' claims against the DDA as a discovery sanction. But the Court rejects the DDA's invitation to hold the bar owners in contempt and incarcerate them. So for the reasons that follow, the Court GRANTS in part and DENIES in part the DDA's motion.

## I.

### A.

The lawsuit between the parties involves the DDA's plan to redevelop the Harmonie Park area in downtown Detroit. (R. 189, PageID.4250–4253.) The DDA requested development proposals. (*Id.* at PageID.4254–4264.) The Plaintiff owners wanted to participate in the redevelopment project and thereby stave off the relocation or closure of their bar. (*Id.* at PageID.4250–4251.) But they submitted their proposal 15 minutes late, and the DDA eventually rejected it as untimely (or, that is the DDA's position anyway). (*Id.* at PageID.4167.)

Upset by the rejection, the bar owners initially tried to work something out with redevelopment officials and staff from the Mayor's Office. They exchanged emails and attended meetings with City and redevelopment officials, but to no avail. (R. 189, PageID.4169–4187.) The bar owners then publicly complained about the fairness of the bidding process. (R. 1, PageID.10.) They believed that the DDA predetermined which proposals would be accepted and which would be rejected. (*Id.*)

According to Plaintiffs, their complaints resulted in retaliation by the City. They claim Detroit police officers started to show up, ticket the bar for noise ordinance violations, and order patrons to leave. (R. 1, PageID.10–11.) And at some point, Detroit police even shut down the bar

completely. (*Id.* at PageID.11.) Soon after, DDA officials told the bar owners they planned to terminate the bar's lease early. (*Id.*)

So the bar owners filed this lawsuit against the DDA, Mayor Duggan, and others, alleging several claims, including a Section 1983 claim of retaliation in violation of the bar owners' First Amendment rights. (R. 1, PageID.13.) Certain defendants were voluntarily dismissed, others answered, and the case moved to discovery. (R. 11, 12, 14, 22.)

**B.**

The discovery disputes had already started by the time of the initial Rule 16 scheduling conference. (R. 29.)

To understand the first dispute requires some background. In response to Plaintiffs' complaint, the DDA, as lessor of the space where Centre Park Bar was located, filed a counterclaim alleging numerous breaches of the lease by Plaintiffs.[1] (R. 16, PageID.227.) The DDA also initiated an audit of the bar's sales. (R. 39, PageID.544.) Specifically, the DDA wanted to know what percentage of the bar's total sales were liquor sales. (R. 44, PageID.634.) If the bar's sales were more than 40% liquor, the bar would be in breach of its lease agreement. (*Id.*) To make that determination, the DDA asked the bar owners to provide records showing total sales, liquor sales, and food sales. (*Id.*) But initially, the bar owners only provided a snapshot of sales. (R. 39, PageID.563, 565, 567, 570, 575, 581, 583, 585, 588, 590, 592.) By the time of the scheduling conference, the bar owners had still not provided a complete picture. (R. 44, PageID.639–640.) So

---

[1] As the parties were also engaged in related state court litigation involving lease issues, the court ultimately declined to exercise supplemental jurisdiction over the counterclaim. But it was part of the case for awhile and issues involving termination of the lease are also part of Plaintiffs' first amendment retaliation claim.

at the scheduling conference, the Court directed the owners (through counsel) to disclose all sales receipts as part of their initial disclosures. (*Id.*)

The DDA also served a request for the audit documents pursuant to Federal Rule of Civil Procedure 34. (R. 44, PageID.4324–4329.) Plaintiffs did not produce the audit records. So the DDA filed its first motion for an order to show cause. (R. 39.) And the Court held a hearing. (R. 41, 44.)

At the hearing, Paterson offered shifting explanations for the bar owners' lack of disclosure and failure to abide by Rule 34. Bottom line—Plaintiffs' counsel indicated the digital records were unavailable and possibly destroyed. (R. 44, PageID.649.) Nevertheless, he said the bar owners were working to assemble the documents. They had a "forensic computer investigator" and an "accountant" trying to unearth the digital records. (*Id.* at PageID.642, 645.) In response to questioning from the Court, Paterson acknowledged that paper records of the bar's sales were likely retrievable from the Michigan Liquor Control Commission. (*Id.* at PageID.641–642, 652, 663.) But he could not fully explain why the bar owners did not provide more complete receipts to the DDA. (*Id.* at PageID.649–650.)

As a result, in June 2017, the Court ordered Paterson to consult with his clients to "produce all requested audit documents" within 30 days, "request the relevant audit documents" from the Liquor Control Commission within 7 days, allow the DDA to depose the bar's general manager, accountant, and forensic computer analyst, and within 30 days pay the DDA's attorney fees for bringing the motion.[2] (R. 43, PageID.629–630.)

---

[2] Some weeks later, in a telephonic status conference held off the record, Paterson said there never was any accountant.

A few months later, another discovery dispute arose. (R. 58.) In May 2017, the DDA served on the bar owners a set of interrogatories and requests for production. (R. 189, PageID.4069.) Roughly a month later, the DDA served a second set. (*Id.* at PageID.4070.) Largely, the discovery requests sought business records from the bar and any documents upon which the bar owners based their legal claims against the DDA and others. But the bar owners failed to formally respond to either set of requests. (*Id.* at PageID.4102.) So the DDA moved to compel, and the Court held a hearing. (R. 61.)

On the day of the September 2017 hearing, the bar owners finally sent the DDA documents—12 in total. (R. 189, PageID.4099.) According to the DDA, the documents were mostly emails from the bar owners to DDA staff members, so they were already in the DDA's possession. (*Id.* at PageID.4099.) Paterson again acknowledged that he failed to follow Rule 34. (*Id*. at PageID.4102.) He also indicated that the 12 documents made up the entirety of the documentary record the bar owners had in their possession, custody, or control. (*Id.* at PageID.4103–4105.) But Paterson did say he was surprised to learn his clients kept so little in the way of business records and had so few documents to support a 10-count lawsuit alleging a conspiratorial plot to retaliate against the bar owners. (*Id.*) So the Court allowed Paterson seven additional days to consult with his clients and ensure that he had turned over all documents. (*Id.* at PageID.4105.)

At the hearing's conclusion, the Court issued several warnings to Plaintiffs. (R. 65.) First, the Court told Paterson that if Plaintiffs truly did not have any other documents responsive to the DDA's discovery requests, then they would be limited at summary judgment and trial to the 12 documents already produced, plus whatever the Defendants produced. (R. 189, PageID.4105; R. 65, PageID.1920–1921.) And the Court made plain:

5

> [I]f, during the course of this litigation, it is discovered or learned that you did have other documents within your possession, custody, and control that were not produced, I will consider sanctions -- I will impose monetary sanctions and I'll let the defendants brief the issue of why I shouldn't dismiss your case for a discovery sanction.
>
> So, I'm going to put you on notice that that is a likely and possible sanction. It's now been plenty of time. I've given you more than enough time to locate all of the documents they've asked for. And now you can tell your client you've got seven more days to make sure. And that's what you're limited to in this case. And if it turns out there are more, they're at risk that this case will be dismissed.

(R. 189, PageID.4105–4106.). In response, Paterson said "I accept that. And my client understands that." (R. 189, PageID.4106.)

Less than a month after entering the order regarding the second dispute, the first dispute resurfaced. This time, the DDA moved for entry of judgment against the bar owners because they failed to pay the attorney fee sanctions awarded to the DDA as a result of the first discovery dispute. (R. 70.) The Court granted the DDA's motion and entered the proposed judgment submitted by the DDA in the amount of $3,956.04 in favor of the DDA. (R. 78.) But the bar owners did not pay. So the DDA issued writs of garnishment to begin collecting. (R. 107, 108, 114, 115.) A few months later, pursuant to the parties' agreement and in lieu of the judgment, the Court entered an amended order giving the bar owners 30 days to pay the sanction. (R. 113, PageID.2255.) In other words, in March 2018, the Court gave the bar owners 30 more days to comply with a monetary sanction order issued nine months earlier. (*Id.*)

Plaintiffs did not comply. (R. 189, PageID.4076, 4291.) Indeed, they did not pay until June 22, 2018, well beyond the 30-day period—and one day after the DDA filed the present motion asking the Court to dismiss the case and to hold the bar owners in civil contempt due to their failure to pay. (*Compare* R. 189, PageID.4076, *with* R. 196, PageID.4426.)

Meanwhile, discovery progressed. And disputes continued to arise as the parties began deposing witnesses. As a result, the Court permitted limited extensions of the discovery deadline to ensure the parties completed discovery. (*See* R. 88, 113, 143.) The final deadline came and went in mid-June 2018. (R. 143, PageID.2651.)

But during the final depositions, the DDA learned about undisclosed documents in the bar owners' possession. In March 2018, the DDA deposed Plaintiff Christopher Williams, one of the owners. During the deposition, Williams said he had documents to support his retaliation allegations. (R. 189, PageID.4158.) But Williams did not have the documents with him and said Paterson never told him he should have brought them. (*Id.*) So the parties agreed to adjourn Williams' deposition until he produced the documents. (*Id.* at PageID.4159.) Eventually he did, sending additional documents to the DDA—19 in all. (R. 189-8.)

Then, at the continued deposition, Williams identified more discovery violations. For one, he spoke of additional unproduced documents pertaining to the operation of the bar. (R. 189, PageID.4270.) And he said he had unproduced records of Detroit Police citations issued to the bar. (*Id.* at PageID.4273.) And he said he never requested any records from the Michigan Liquor Control Commission (*id.* at PageID.4271–4272), despite the Court order directing the bar owners to do so by the end of June 2017 (R. 43, PageID.629).

Over a month later, the problems continued when Defendants deposed another Plaintiff, Kenneth Bridgewater. (R. 189-10.) For the first time, the DDA learned Bridgewater might have phone records documenting pre-bid conversations with Denis Archer, Jr. (R. 189, PageID.4276.) And Bridgewater arrived at the deposition with documents he refused to disclose to Defendants. (R. 189, PageID.4276, 4278.) Among the documents, Bridgewater said he had notes from meetings, all of which occurred prior to filing suit and all dealing with issues at the heart of this

7

case. (*Id.* at PageID.4277.) And Bridgewater said he had still more notes at home. (*Id.* at PageID.4278, 4279, 4281, 4286, 4287, 4288.) Bridgewater said the notes memorialized pre-bid meetings with redevelopment officials (*id.* at PageID.4277), settlement meetings with DDA officials (*id.* at PageID.4279), at least one conversation with the Mayor (*id.* at PageID.4280), multiple interactions with Detroit Police Officers (*id.* at PageID.4282–4283), a meeting where DDA officials allegedly told the bar owners the Mayor did not want "black clientele downtown" (*id.* at PageID.4285), and maybe records of fire code violations the bar received (*id.* at PageID.4288). Bridgewater never produced any of the documents. (R. 189, PageID.4075–4076.)

These depositions also revealed tax returns that had not been produced and which are relevant to the issue of damages. (R. 189, PageID.4079.) According to Plaintiffs, these returns were only recently filed and that is why they were not produced. (R. 196, PageID.4428.) But Plaintiffs do not reveal the filing date. (*Id.*)

Taken together, Williams and Bridgewater's revelation of documents previously undisclosed constitute a violation of the Court's September 2017 order and Federal Rules of Civil Procedure 34 and 37. (R. 65, PageID.1921.) And as that 2017 order put Paterson and the individual Plaintiffs on notice that disclosure of documents past late-September 2017 opened the door for the DDA to move to dismiss, the DDA so moved. (R. 189.)

Individual Plaintiffs oppose the motion through an untimely response. (R. 196.) (The corporate Plaintiff filed for Bankruptcy and is subject to an automatic stay.) The issues are familiar to the Court and so a hearing would not aid in the resolution of the motion. E.D. Mich. LR 7.1(f).

## II.

Where a plaintiff or plaintiff's counsel flouts the Federal Rules of Civil Procedure or court orders, the Rules contemplate dismissal of the action. *See* Fed. R. Civ. P. 41(b), 37(b) and (c). To

assess whether dismissal is warranted, the Court weighs four factors. *See Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153–55 (6th Cir. 1988). The failures to comply must be "due to willfulness, bad faith, or fault"; the other side must show prejudice flowing from the conduct; the Court must have warned the noncompliant party that their conduct might bring about dismissal; and the Court must have at some point imposed or considered lesser sanctions. *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013); *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366–67 (6th Cir. 1997).

### III.

The DDA says all four factors point toward dismissal. (R. 189, PageID.4077.) Relevant to the first factor, Plaintiffs never "timely or voluntarily complied with any [written] discovery obligations." (*Id.*) Most telling, the DDA points to the paucity of documents initially produced and the much later revelation by Bridgewater and Williams that more documents have always existed. (*Id.* at PageID.4078–4079.) This noncompliance prejudiced the DDA to the tune of time and money spent on numerous conferences, motions, and hearings to obtain compliance with the Federal Rules of Civil Procedure. (*Id.* at PageID.4079–4080.) And Plaintiffs and their counsel had the benefit of both lesser sanctions and a warning to change their ways. (*Id.* at 4080–4081.)

Consistent with their discovery problems, Plaintiffs did not timely respond to the DDA's motion for the sanction of dismissal. *See* L.R. 7.1(e)(1)(B). When the bar owners finally did respond, they said they had complied with all the Court's discovery orders (R. 196, PageID.4428), and took issue with the DDA's attempt to hold them in civil contempt (*Id.* at PageID.4426). In particular, the bar owners said they had already paid the sanctions, so the DDA's assertions to the contrary were just "misleading and false arguments[.]" (R. 196, PageID.4426.) And the documents

9

the DDA says are missing are really just tax documents that the bar owners had not prepared or filed "until recently." (*Id.* at PageID.4428.)

The DDA replied. They attached a copy of two money orders from Paterson, payable to DDA. (R. 197, PageID.4440.) Each was dated June 22, 2018—one day *after* the DDA filed its motion to dismiss. (R. 189.)

The Court finds that the four-factor test supports dismissal as a discovery sanction.

### A.

The first factor "requires 'a clear record of delay or contumacious conduct.'" *Carpenter*, 723 F.3d at 704 (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). Contumacious conduct can mean a few things. *Carpenter*, 723 F.3d at 704–05. One is behavior that is "'perverse in resisting authority' and 'stubbornly disobedient.'" *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting Webster's Third New International Dictionary 497 (1986)). Another is conduct displaying "either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001). And a third is conduct "stubbornly disobedient and willfully contemptuous." *Harmon*, 110 F.3d at 368.

Here, Plaintiffs and their counsel have violated multiple Court orders and failed to follow the Federal Rules on several occasions. (R. 189, PageID. 4102; R. 44, PageID. 642.) Recall that Plaintiffs provided dubious reasons for failing to turn over audit records that the Court ordered produced as part of the initial disclosures. And the audit records were again sought in a document request. So over a year ago, in June 2017, the Court directed Plaintiffs to request their own bar records from the Michigan Liquor Control Commission. That was never done—even prior to the lease issues being remanded to state court. (R. 189, PageID.4076; R. 189, PageID.4272.) Move on

10

to the September 2017 order. There, the Court ordered Paterson to consult with his clients over the next seven days to be certain that they had disclosed any and all responsive documents in their possession, custody, and control. And yet, months later, when the DDA deposed the individual Plaintiffs, they revealed undisclosed documents that are relevant and responsive. And presently, they continue to withhold them. Some records detail the business of running the bar, others detail actions taken against the bar by DPD officers, and still others memorialize meetings with DDA and City officials regarding the redevelopment plan. Just as clearly, Plaintiffs violated the Court's November 2017 and March 2018 orders directing them to pay certain of the DDA's costs and fees as a monetary sanction. After the bar owners did not pay under the November order, the March order issued, giving them until early April to pay. (R. 117, PageID. 4154.) They failed to do so. Plaintiffs did not pay the monetary sanction until June 22, 2018—the day after the DDA filed this motion to dismiss.

Unfortunately, neither the Plaintiffs nor Paterson have been forthright with the Court. Paterson offered shifting and unpersuasive explanations for his clients' failure to provide audit records. And in their (untimely) response to this motion, Plaintiffs claim that they have complied with all of the Court's discovery orders. But the record plainly belies that assertion. And, with the exception of the tax returns, Plaintiffs fail to even address, let alone explain, their failure to produce the other documents and records identified by the DDA. Worse still, the response states, "Contrary to the Defendant DDA's misleading and false arguments, individual Plaintiffs have paid the sanctions judgment entered by the Court in the amount of $3,957." (R. 196, PageID.4426.) But at the time the DDA filed the motion, June 21, 2018, Plaintiffs had not yet paid the sanctions. So the Plaintiffs are the ones making misleading and false statements.

11

All told, in two years, Plaintiffs and their counsel have violated three of the Court's discovery orders, ignored the Federal Rules of Civil Procedure, and have been less than honest in their representations to the Court. Their behavior goes beyond mere violation of the local rules or dilatory tactics. *See Carpenter*, 723 F.3d at 705 (declining to find contumacious the plaintiff's delayed filings and violations of the local rules); *Mulbah*, 261 F.3d at 592 (collecting cases to reason that mere "dilatory" conduct is not enough to show contumacious conduct). Added together, the conduct is contumacious. *See Harmon*, 110 F.3d at 368 (finding contumacious conduct where an attorney inadequately responded to court-ordered discovery requests, served nearly a year prior, and ignored the other party's requests for compliance); *see also Baron v. Univ. of Mich.*, 613 F. App'x 480, 484–85 (6th Cir. 2015) (finding contumacious conduct where plaintiff and her counsel provided incomplete discovery responses, never disclosed documents despite an order to compel, and never paid sanctions); *Smith v. Nationwide Mut. Fire Ins. Co.*, 410 F. App'x 891, 895–96 (6th Cir. 2010) (finding contumacious conduct where plaintiffs ignored discovery requests and refused to produce documents despite two court orders demanding they do so); *Fharmacy Records v. Nassar*, 248 F.R.D. 507, 530 (E.D. Mich. 2008) (finding contumacious conduct where, among other things, plaintiff and their attorney attempted to conceal evidence and lied to opposing counsel), *aff'd*, 379 F. App'x 522 (6th Cir. 2010). The first factor is satisfied.

### B.

As for the second factor, prejudice requires the DDA show they were "required to waste time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Harmon*, 110 F.3d at 368.

The DDA says they have been "forced to file four motions directed at obtaining various discovery requests, attend multiple hearings on these motions, request and attend multiple 'meet

12

and confers,' and incur a substantial amount of otherwise unnecessary attorney's fees and costs." (R. 189, PageID.4080.) And Williams' deposition had to be continued because he failed to provide necessary documents. These added costs cause prejudice. *See Harmon*, 110 F.3d at 368. And the record shows that, eventually, the DDA's lawyers will pass those added costs onto their clients. (*See, e.g.*, R. 70-1.)

Moreover, the lengthy discovery period is technically over, so the DDA has expended more than minimal efforts in this case. But there may be a need for some follow-up discovery. Bridgewater was one of the last people deposed. He testified that he has proof of a conspiracy to oust the Centre Bar from Harmonie Park. (R. 189-10.) But he also testified that he has not produced all of his documentary proof. If he had disclosed the documents when the Court ordered him to do so—nearly eight months prior to his deposition—then the DDA may have asked different questions at Bridgewater's deposition, and at earlier ones. Re-deposing witnesses would only increase the DDA's costs and prejudice.

The prejudice factor points to dismissal.

### C.

So, too, do the fair-warning and lesser-sanction factors. As for fair warning, back in September 2017, the Court put Paterson "on notice" that dismissal was a "likely and possible sanction" if Plaintiffs did not comply with the Court's discovery order. (R. 189, PageID.4105.) Paterson said he understood, and he said his clients understood. So early on, Paterson "was warned that failure to cooperate could lead to dismissal." *Mulbah*, 261 F.3d at 589. Second, at different times, the Court imposed lesser sanctions in the form of a monetary fine and limits on the future use of evidence if Paterson and his clients failed to produce everything they had (R. 43, PageID.629–30; R. 65, PageID.1920). *See Carpenter*, 723 F.3d at 709–10. But, as detailed above,

13

the lesser sanctions did not result in compliance with the Court's orders or the Federal Rules of Civil Procedure. The September 2017 order provides an instructive example.

The final factors each point toward dismissal.

## D.

In the end, all four factors favor dismissal. Plaintiffs engaged in contumacious conduct and the DDA established prejudice as a result. The Court warned Plaintiffs that their continued disregard for the Court's orders and the Rules would make dismissal a likely sanction. And the Court tried lesser sanctions, but none worked.

Thus, the Court dismisses the individual Plaintiffs' claims against the DDA.

## IV.

The DDA also asks the Court to hold the bar owners in civil contempt for violating the Court's orders, especially the monetary-sanctions award. (R. 189, PageID.4082.) And the DDA wants the bar owners conditionally incarcerated until they pay. (*Id.* at PageID.4084.)

But contempt is a "serious" power to be used only as a "last resort." *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 799 (6th Cir. 2017). And the DDA's motion has resulted in the payment of the monetary sanctions award. So the DDA's request to hold the Plaintiffs in contempt is denied.

## V.

In sum, the Court GRANTS in part and DENIES in part the DDA's motion to dismiss. (R. 189.) The Court dismisses the individual Plaintiffs' claims against the DDA but does not find them in civil contempt.

SO ORDERED.

                                                              s/Laurie J. Michelson
                                                              UNITED STATES DISTRICT JUDGE

Date: October 9, 2018

  I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, October 9, 2018, by electronic and/or ordinary mail.

              <u>s/William Barkholz</u>
              Case Manager